Anthony J. Mavronicolas
Mavronicolas PC
415 Madison Avenue, 18th Floor
New York, New York 10017
Telephone: (212) 2536040
Facsimile: (212) 2026263
amavronicolas@ajm-law.com
Attorneys for Albtelecom SH.A.,

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

ALBTELECOM SH.A,

                    Petitioner,


            V.                                 Civil No.16 CV 09001 (PAE)


UNIFI COMMUNICATIONS, INC.

                    Respondent.


_____


PETITIONER ALBTELECOM'S MEMORNADUM OF LAW
IN SUPPORT OF PETITIONER'S LEGAL ARGUMENT THAT
THE COURT SHOULD RETAIN JURISDICTION TO ENFORCE
COMPLIANCE WITH THE CONFIRMED CONSENT AWARD

Mavronicolas PC
415 Madison Avenue, 18th Floor
New York, New York 10017
Telephone: (212) 2536040
Facsimile: (212) 2026263
Attorneys for Albtelecom SH. A

Of Counsel
Anthony J. Mavronicolas

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**....................... ……………………………………………………….......1

**STATEMENT OF FACTS**………………… …………………………...........…….....……….........2

**LEGAL ARGUMENT**………….................. …………………………….....…………………...…..5

I. WHETHER THIS COURT HAS
JURISDICTION UNDER THE UNITED
NATIONS CONVENTION ON THE
RECOGNITON AND ENFORCEMENT OF
FOREIGN ARBITRAL AWARDS TO
NOW ORDER UNIFI TO COMPLY WITH
THE CONSENT AWARD CONFIRMED
BY THIS COURT.......................................... …………………………....…...................……………5

    A. The Obligation to Interpret
    Confirmed Awards to Effect
    Compliance……………………………. …………………………………………………….8

II. WHETHER THE COURT SHOULD
ENFORCE COMPLIANCE WITH THE
CONSENT AWARD AS
WRITTEN…………………………………... ……………………………………………………….9

    A. The Court's Obligation to
    Effect Compliance ……………………… ……………………………………………………….9

    B. Arbitral Power and the Exercise
    of Ancillary Jurisdiction to Enforce
    Compliance…………………………….. …………………………………….........................11

    C. The Court's Authority to Issue
    Orders Modifying Compliance
    Obligations to Account for Events
    Occurring After the Issuance of
    Arbitral Awards………………..………. …………………………………………………...13

    D. The Court has the Authority to
    Decide Upon a Proceeding to Resolve
    the Factual Issue UNIFI has
    Raised…………………………………. ……………………………………………………...15

CONCLUSION……………………………. ……………………………………………………...16

TABLE OF AUTHORITIES

*Cases*

*Admart AG v. Stephen & Mary Birch Foundation, Inc.*
    *457 F.3d 302 (3d Cir. 2006)*……………………………………………………...13, 14, 15

*Banco de Seguros del Estado v. Mut. Marine Office Inc.*
    *344 F.3d 255, 258-259 (2d Cir. 2003)*………………………………………………12

*Bergesen v. Joseph Muller Corp.*
    *710 F.2d 928 (2d Cir. 1983)*…………………………………………………...……5

*Corporación Mexicana De Mantenimiento Integral, S. De R. L. De C.V. v.*
*Pemex-Exploración Y Producción*
    *832 F.3d 92 (2nd Cir. 2016)*………………………………………………………… 8

*Domino Group Inc v. Charlie Parker Mem'l Foundation*
    *985 F.2d 417, 419 (8th Cir. 1993)*……………………………………………………...15, 16

*Folkways Music Publishers, Inc. v. Weiss,*
    *989 F.2d 108, 111 (2d Cir. 1993)*……………………………………………………8

*Hall Street Associates L.L.C. v. Mattel Inc.*
    *552 U.S. 576 (2008)*…………………………………………………………………9, 10

*Ottley v. Schwartzberg*
    *819 F.2d 373 (2d Cir. 1987)*………………………………………………………10, 11

*Ministry of Defense of the Islamic Republic of Iran v. Gould Inc.*
    *969 F.2d 764 (9th Cir. 1992)*………………………………………………………14

*Parsons Whittemore Overseas Co. v. Societe Generale de I'Industrie du Papier (RAKTA)*
    *508 F.2d 969, 979 (2d Cir, 1974)*…………………………………………………...5, 14, 15

*Scherk v. Alberto-Culver Co.*
    *417 U.S. 506, 520, 94 S. Ct. 2449 (1974)*…………………………………………..5

*Termorio S.A. E.S.P. v. Electranta S.P.*
    *487 F.3d 928 (D.C. Cir. 2007)*..…………………………………………………..8

*Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*
    *864 F.3d 172 (2d Cir. 2017)*…………………………………………………………6, 7, 10

*Zeiler v. Deitsch*
    *500 F.3d 157, 168 (2d Cir. 2007)*…………………………………………………...12, 13

*Statutes*

9 U.S.C.S. § 203……………………………………………………………………5

9 U.S.C. § 1 et. seq.………………………………………………………………9

9 U.S.C. §§ 201-08…………………………………………………………………10

***Other Authorities***

ICC Arbitration Rule 22(5)……………………………………………………………..11

T.E. Carbonneau, "The Law and Practice of Arbitration",
   5th Edition, (Juris 2014)……………………………………………………………9, 10, 11

New York Convention…………………………………….…………………….1, 5, 6, 7, 10, 13, 16

PRELIMINARY STATEMENT

The Petitioner Albtelecom SH.A ("Albtelecom") and the Respondent UNIFI Communications, Inc.  ("UNIFI") began arbitrating their contractual dispute in June of 2012, entered into a Settlement Agreement which Albtelecom expected would end their dispute with the parties' request for the issuance of a Consent Award which required UNIFI to make 39 monthly payments to Albtelecom, and in the event of UNIFI's failure to timely make those monthly payments, awarded Albtelecom a lump sum payment, less any payments UNIFI may have made as of the time of that default in payment. On May 30, 2017 this Honorable Court confirmed that Consent Award. Albtelecom asserts that because of UNIFI's failure to comply with the payment mandate of the now confirmed Consent Award, UNIFI must instead comply with the lump sum payment mandate of the Consent Award.

In resisting both confirmation of the Consent Award, and now in resisting Albtelecom's claim that UNIFI must now comply with the lump sum mandate of the Consent Award, UNIFI argues that Albtelecom consented to UNIFI's failure to make monthly payments between January of 2016 and May of 2017 when this Court confirmed the Consent Award. UNIFI's argument must be unavailing in resisting confirmation of the Consent Award because allowing such a defense to confirmation would clearly undermine the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention) by allowing anyone to resist, and easily delay confirmation and then compliance, by simply raising such a factual defense.

In a further effort to resist compliance with the Consent Award UNIFI now argues that the dispute over UNIFI's failure to comply with the Consent Award's monthly

1

payment requirements is an issue that must be decided by arbitration at the International Court of Arbitration in Geneva Switzerland ("ICC"). In furtherance of that argument UNIFI has demanded arbitration at the ICC. However, UNIFI has done so, not in any proceeding regarding the Consent Award which is before this Court, but instead by invoking the arbitration clause of the Settlement Agreement. In accordance with the terms of the Settlement Agreement, the Parties agreed to obtain, and then obtained from the ICC the Consent Award at hand. In this respect it is noteworthy that  the arbitration clause in that Settlement Agreement expressly excluded from arbitration any and all disputes arising out of UNIFI's payment obligations.

By now repeatedly raising a spurious defense based on an alleged undocumented agreement to excuse a failure to pay, UNIFI has thwarted the strong policy in the United States which favors the expeditious enforcement of arbitration awards. Now three years after the issuance of the Consent Award, and five years after the commencement of the arbitration proceedings, UNIFI has managed to extensively delay full compliance with the terms of the Consent Award.


<u>STATEMENT OF FACTS</u>

The facts relevant to whether the issue of Respondent UNIFI default in payment under the now confirmed Consent Award should be resolved by this Honorable Court, or in proceedings before the ICC, are fully set forth in the Declaration of Christopher Bollen (Dkt 3), the Supplement Declaration of Christopher Bollen (Dkt 24), and the Declaration of Ervin Shpori (Dkt 23), previously filed herein.

2

With respect to the most relevant facts for the purposes of deciding this issue, it is respectfully submitted that the Court should consider the following:

The Petitioner Albtelecom and the Respondent UNIFI entered into a Settlement Agreement on April 16, 2015 in which the parties agreed to the issuance of a Consent Award by the ICC. (Dkt 3, Ex 2, p. 24). Clause 13.2 of that Settlement Agreement included an arbitration clause which specifically excluded any dispute regarding the payment and default terms contained in Clause 2 of the Settlement Agreement from being submitted to arbitration:

> All disputes, save those related to Clause 2, arising out of the Settlement Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce…. (Dkt 3. Ex 2, p.31).

The parties complied with their Settlement Agreement by reviewing, commenting upon and then agreeing upon all of the provisions of the Consent Award issued by the sole arbitrator at the ICC, which Consent Award was in turn confirmed by order of this Court on May 30, 2017 (Dkt 36).  The confirmed Consent Award in Section 12, its "Dispositive Part", provided for the payment terms of the Consent Award, which included an alternate damage award in the event UNIFI failed to strictly comply with the payment terms of the Consent Award. (Dkt 3, Exh 2, p.38-41). No part of the Consent Award required the submission to arbitration at the ICC of any disputes that might arise with respect to the parties' compliance, or failure to comply, with the monthly payment terms or the lump sum payment awarded in the event of UNIFI's failure to comply with the monthly payments of the Consent Award.  (Dkt 3, Exh 2, p.2-41).

Albtelecom argues that UNIFI has failed to comply with payment terms of the Consent Award by repeatedly failing to make the required monthly payments between

January of 2016 and May of 2017 required by the monthly payment terms of the Consent
Award, such that Albtelecom is now entitled to the accelerated lump sum payment
provided for in the Consent Award. (Dkt 1, p.14-15).

UNIFI now argues that Albtelecom's claim as to UNIFI's failure to comply with
the monthly payment terms of the Consent Award should be submitted to arbitration at
the ICC, rather than be heard before this Court. (Dkt 42). That arbitration was only
commenced by UNIFI at the ICC on the eve of filing an Answer in these proceedings,
and only pursuant to the arbitration clause of the Settlement Agreement, not under any
terms of the Consent Award, in which UNIFI claimed that: "… the Parties have entered
into an agreement of deferment, according to which **[Unifi's] payment obligations
under the Settlement Agreement** of 16 April 2015 has been suspended since December
2015…" (emphasis added) (Dkt 20, pg 11). Clearly, the ICC arbitration UNIFI urges the
Court to defer to has nothing to do with the Consent Award.  Nor did anything contained
in the Consent Award give an ICC arbitrator the authority to resolve any issue regarding
UNIFI's failure to comply with the Consent Award. Finally, as already noted above,
UNIFI not only commenced that new arbitration pursuant to the arbitration clause of the
Settlement Agreement,  but also which explicitly excluded any dispute over UNIFI's
payment obligations from arbitration.

LEGAL ARGUMENT

I. WHETHER THIS COURT HAS JURISDICTION UNDER THE
   UNITED NATIONS CONVENTION ON THE RECOGNITON
   AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS
   TO NOW ORDER UNIFI TO COMPLY WITH THE CONSENT
   AWARD CONFIRMED BY THIS COURT

The enabling legislation of the United Nations Convention on the Recognition

and Enforcement of Foreign Arbitral Awards (New York Convention) 21 U.S.T. 2517

T.I.A.S. No. 6997, 330 U.N.T.S. 38, gives this Court original jurisdiction over

proceedings under the New York Convention. 9 USC § 203 (2017). In *Bergesen v.*

*Joseph Muller Corp.* 710 F.2d 928 (2d Cir. 1983) the United States Court of Appeals for

the Second Circuit was called upon to review a decision in which the District Court

exercised its original jurisdiction under the New York Convention to confirm a domestic

arbitration award falling under the New York Convention. Citing to the United States

Supreme Court's decision in *Scherk v. Alberto-Culver Co.* 417 U.S. 506, 520, 94 S. Ct.

2449 (1974) and the Second Circuit's decision in *Parsons Whittemore Overseas Co. v.*

*Societe Generale de I'Industrie du Papier (RAKTA)* 508 F.2d 969, 979 (2d Cir, 1974) the

court concluded that the treaty language should be interpreted broadly to effectuate the

treaty's recognition and enforcement purposes.

Article III of the New York Convention mandates the enforcement of foreign

arbitral awards by all signatories to the convention:

> Each contracting State shall recognize arbitral awards
> binding and enforce them in accordance with the rules
> of procedure of the territory where the award is relied
> upon… Article III, 21 U.S.T. 2517 T.I.A.S. No. 6997,
> 330 U.N.T.S. 38.

Article VII of the New York Convention further establishes:

> The provisions of the present Convention shall not
> … deprive any interest party of any right he may
> have to avail himself of an arbitral award in the
> manner and to the extent allowed by the law or the
> treaties of the country where the award is sought to
> be relied upon. Article VII, 21 U.S.T. 2517 T.I.A.S.
> No. 6997, 330 U.N.T.S. 38.

In the matter at bar, this Court is called upon to apply these enforcement provisions of the New York Convention to determine whether this Court must retain the original jurisdiction the New York Convention confers on the Court to enforce compliance with the Consent Award, or whether the ICC in Geneva must adjudicate whether UNIFI has complied with the Consent Award.

Although this issue appears to be a matter of first impression without any applicable direct guiding precedent, a recent case decided by the Court of Appeals for the Second Circuit offers an analytical framework for deciding the matter at bar. *Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic* 864 F.3d 172 (2d Cir. 2017). *Thai-Lao Lignite* arose out of a foreign arbitral award that had been vacated by the courts of the place of arbitration, Malaysia, for which petitioner, nonetheless, sought enforcement in the United States. In *Thai-Lao Lignite* at 172 the Court of Appeals affirmed the District Court's decision vacating the judgment that had confirmed that annulled foreign arbitral award. To reach that holding the Court of Appeals turned to the New York Convention which it explained governed the enforcement proceedings for foreign arbitral award in deciding whether the foreign adjudication that had nullified the arbitral award, or the procedures in the United States for enforcing awards, should be applicable to the arbitral award at issue. In doing so, the court wrote:

> The state in which or under whose laws an award is made
> is referred to as the "primary jurisdiction," while all other

6

> signatory states are considered "secondary jurisdictions." (citations omitted) The Convention conceives of a secondary jurisdiction's review of an award as relatively limited: Article III of the Convention provides that the secondary jurisdiction "shall" enforce the award unless the party opposing enforcement furnishes proof that one (or more) of seven exceptions described in Article V obtains. *See* N.Y. Convention arts. III, V. *Thai-Lao Lignite* at 179.

Thus in reaching its decision to allow the confirmation of the annulled arbitral award to stand, by affirming the decision of the court below, the Court of Appeals looked to Article III of the New York Convention which, in the court's reasoning, placed on the signatories to the treaty the obligation to recognize arbitral awards as binding and to enforce them. *Thai-Lao Lignite* at 182. The Court of Appeals went on to explain that Article V(1)(e) of the New York Convention appeared to leave the District Courts with the discretion to enforce an award that had, indeed, even been annulled by the courts at the situs of the arbitration; the scope of that discretion however had to be constrained by the concerns for international comity. *Thai-Lao Lignite* at 183.

In the matter at bar, this Court need not be concerned with undermining international comity by enforcing the arbitral award here by giving effect to the awards provision for a lump sum payment upon resolving the factual issue of UNIFI's default, and not forgoing the Court's fundamental obligation under the New York Convention, as a secondary jurisdiction, to enforce the award as written. By deferring to a future decision of the ICC arbitration commenced by UNIFI to determine an alleged dispute under the parties Settlement Agreement, this Court would be disregarding its fundamental obligation under the New York Convention to enforce foreign awards. Rather, by deciding to proceed with the enforcement of the arbitral award by resolving the factual

dispute over UNIFI's default, the Court meets its obligation to enforce arbitral awards as

they are written.  See also: *Corporación Mexicana De Mantenimiento Integral, S. De R.*

*L. De C.V. v. Pemex-Exploración Y Producción,* 832 F.3d 92 (2nd Cir. 2016), *Termorio*

*S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007).

     A. <u>The Obligation to Interpret Confirmed Awards to Effect Compliance</u>

     Further, in enforcing a foreign arbitral award such as the one at bar, the Second

Circuit has held that entering a judgment enforcing such an arbitral award allows the

enforcing District Court to interpret the content of that arbitral award to address matters

occurring after the issuance of that arbitral award. *Corporación Mexicana De*

*Mantenimiento Integral, S. De R. L. De C.V. v. Pemex-Exploración Y Producción,* 832

F.3d 92 (2nd Cir. 2016). In *Corporación Mexicana* the party opposing confirmation of an

award, annulled in the courts at the place of the arbitration, had executed on the

petitioner's performance bond after the issuance of the soon to be annulled award. *Id.* In

entering judgment on that annulled award, the District Court included the amount of that

bond executed on by the respondent as part of the petitioner's damage in the judgment

entered on that annulled arbitral award, despite the arbitrator not having included those

specific damages it their award. *Id.* at 111-112. As the Court of Appeals noted in

affirming the District Court's decision confirming that annulled award, and entering a

judgment on that arbitral award, including damages only assessable after the issuance of

that award:

> Although the confirmation role is limited, we
> have still allowed district courts to interpret the contents
> of applicable awards. See *Folkways Music Publishers,*
> *Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993)* ("In
> finding that the award encompassed rights to the
> underlying works, the district court properly interpreted

the award."). The Southern District's interpretation was sound; the $106 million was properly included in the judgment. *Id.*

In that matter at bar, this Court in its decision of May 30th has already confirmed the Consent Award. (Dkt 36).  In ordering the entry of a judgment on the Consent Award, once having resolved the singular factual dispute over UNIFI's default which occurred after the issuance of the Consent Award, this Court would be interpreting the Consent Award by enforcing the lump sum payment provided for in the Consent Award.

II. <u>WHETHER THE COURT SHOULD ENFORCE COMPLIANCE WITH THE CONSENT AWARD AS WRITTEN</u>

   A. <u>The Court's Obligation to Enforce Compliance</u>

Professor Thomas E. Carbonneau, a principal commentator on the law of international arbitration, explains in his treatise on the law and practice of arbitration that once an arbitral award is issued, it falls to the courts to enforce those awards:

> Once the arbitral tribunal renders an award and the administering arbitral institution delivers it to the arbitrating parties, the arbitral process is concluded and jurisdiction reverts to the courts for purposes (if necessary) of compulsory enforcement. (footnote omitted)
> T.E. Carbonneau, "The Law and Practice of Arbitration", 5th Edition, (Juris 2014).

In support of his conclusion that enforcement falls exclusively to the courts once a final award is issued, Professor Carbonneau cites the U.S. Supreme Court's decision in *Hall Street Associates L.L.C. v. Mattel Inc.* 552 U.S. 576 (2008). Id at 515 N.1.   In *Hall Street* at 585-586 the parties drafted an arbitration agreement that gave the courts broad scope of review over their award. The Supreme Court held that the once the award is issued, the Federal Arbitration Act, (FAA) 9 U.S.C. § 1 et. seq. (2017), and arbitration law superseded both the authority of the arbitrators to act further, other than in limited

instances of the need for clarification, and supersedes any agreements made by the parties governing their arbitration which went beyond what the FAA, and the law of arbitration, allowed for. *Id.*

Further, having divested the issuing arbitrator of jurisdiction to act any further on their arbitral award[1], as the Second Circuit explained in *Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic* 864 F.3d 172 (2nd Cir. 2017), the courts obligation under the New York Convention to enforce arbitral awards is mandatory, not permissive or discretionary:

> The obligations on U.S. courts that the Convention imposes as to the enforcement of foreign arbitral awards are stated in Chapter 2 of the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 201-08. As relevant here, Section 207 directs that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. 207 *Thai-Lao Lignite* at 179.

The Second Circuit's decision in *Ottley v. Schwartzberg* 819 F.2d 373 (2d Cir. 1987), is close to the facts of the case at bar, and also rests on the obligation of the courts, not arbitrators, to enforce arbitral awards. In *Ottley* at 374-375, the arbitrators had issued a Consent Award, arising out of the parties settlement agreement entered into during the course of an arbitration, requiring monthly payments by the respondent employer into an employee pension fund. The petitioner union commenced proceedings to confirm the award, alleging the respondent's failure to comply with the consent award's payment schedule, and seeking a judgment requiring a lump sum payment of the missed scheduled payments. *Id.*  The respondent employer denied the allegation of non-compliance. *Id.* The

---

[1] It is well settled that once an arbitrator issues their arbitral award they become *functus officio,* without jurisdiction to act further on their award. T.E. Carbonneau, *"The Law and Practice of Arbitration"* at 515 N.3

District Court declined to enforce the award and remanded the dispute back to the arbitrator to determine whether the respondent was in compliance with the award. *Id* at 376.

The Court of Appeals reversed the District Court's decision and remanded the case for the District Court to confirm the award. *Id* at 377. In finding that it was improper for the court below to send the case back to the arbitrator for a determination of the parties' compliance with the award, the Court of Appeals explained that the basis for its ruling was that once the arbitrator had issued their award, they became *functus officio,* without jurisdiction to take any further action in the matter, and that nothing in the record before the court indicated that the parties had agreed to submit the issue of compliance to the arbitrator. *Id.* at 376.

Similarly, in the matter at bar the parties have not agreed to submit the compliance dispute to the ICC for resolution. Indeed UNIFI has commenced an ICC arbitration which Albtelecom has resisted on jurisdictional grounds, but UNIFI has done so under the arbitration clause of the parties' Settlement Agreement which explicitly excludes from arbitration any dispute over payment. (Dkt 3, Exh 2, p.31).

B. Arbitral Power and the Exercise of Ancillary Jurisdiction to Enforce
   Compliance

It is well settled that arbitrators are general empowered to rule according to law, equity, or according to their technical knowledge and expertise. T.E. Carbonneau, "The Law and Practice of Arbitration" at 59. The arbitration rules of the ICC under which the Consent Award was issued require the parties to the arbitration to comply with "any order" issued by the arbitrator. (ICC Arbitration Rule 22(5)). In the matter at bar UNIFI had an opportunity to review and comment upon the orders contained in the Consent

Award, and ultimately agreed upon the specific orders contained in the Consent Award which mandated monthly payments by UNIFI and an alternative accelerate lump sum payment in the event UNIFI defaulted in making its monthly payments. (Dkt 3, Exh 2, p.36). So not only was the ICC authorized to issue its order for both a monthly payment schedule and a lump sum payment in the event of UNIFI's failure to make those monthly payments, but UNIFI also participated in the drafting of that order.

The Court of Appeals has also affirmed decisions by courts below which confirmed arbitration awards in which the arbitrators had ordered the party resisting confirmation to take specific actions, beyond simply making payment to the party seeking confirmation of awards mandating such specific actions. *See Banco de Seguros del Estado v. Mut. Marine Office Inc.* 344 F.3d 255, 258-259 (2d Cir. 2003) (mandating the posting of a letter of credit as security). In *Zeiler v. Deitsch* 500 F.3d 157, 168 (2d Cir. 2007) the arbitrators issued a series of interim awards ordering accountings by the respondent resisting confirmation of those awards on the grounds that the orders had been complied with and were not final awards. In affirming the decision below confirming those accounting orders, the Second Circuit found:

> This was not a "regular" arbitration, in which the arbitrators would hear all the evidence and eventually reach a conclusive resolution of the entire case. Rather the arbitrators were asked to preside over the continuing process of sorting out the details of a commercial relationship, entering operative decisions along the way.  *Id* at 168.

As part of the District Court's confirmation of the accounting orders the court had also granted the petitioner's enforcement motion extending the dates for th*e* accountings contained in those awards. *Id* at 162. The Second Circuit in *Zeiler* affirmed the District Court's decision granting extending the dates for those accountings, explaining:

At the confirmation stage, the court is not required to consider
the subsequent question of compliance. (citations omitted).
...
'As a general rule, once a federal court has entered judgment,
it has ancillary jurisdiction over subsequent proceedings nec-
essary to vindicate its authority, and effectuate its decrees.
This includes proceedings to enforce the judgment.' *Dulce v.
Dulce* 233 F.3d 143, 145 (2nd Cir. 2000) *Id.* at 169.

As in *Zeiler,* the Consent Award at bar was a sorting out by the parties, with the

aid of the ICC arbitrator, of a complex commercial relationship, which resulted in an

order for a payment schedule and an order for a lump sum payment in the event the

payment schedule was not complied with. This Court is now being called upon to enforce

those orders in satisfaction of its obligations to enforce under the New York Convention,

and under its ancillary jurisdiction now that the Consent Award has been confirmed, by

resolving the questionable factual dispute UNIFI has raised, and then entering a judgment

providing for compliance with that lump sum payment.

C. <u>The Court's Authority to Issue Orders Modifying Compliance Obligations
to Account for Events Occurring After the Issuance of Arbitral Awards</u>

In enforcing the Consent Award, this Court has the power under the New York

Convention to issue an order modifying UNIF's compliance with the Consent Award in

conformity with the Consent Award's provisions. In *Admart AG v. Stephen & Mary

Birch Foundation, Inc.* 457 F.3d 302 (3d Cir. 2006), a Panel of the Court of Appeals for

the Third Circuit was presented with an appeal from a District Court's decision

confirming a foreign arbitral award in which the court had made modifications to the

award in its enforcement order to effectuate the execution of the award in conformity

with the damage provisions of the award. The petitioner seller of the art works sought

confirmation of the ICC arbitration which had applied Swiss Law to the dispute. *Admart*

13

at 303. The original arbitral award had provided for the exchange of the works of art

against simultaneous payment within a fixed date, or in the alternative, a delivery of the

art works through a third person and subsequent payment with the holding back of some

funds. *Id.* In confirming the arbitral award the District Court had modified the damages

portion of the award in its confirmation order by changing the manner and timing of the

parties' execution of the award. *Id* at 306. Although a Swiss arbitration proceeding had

commenced on what the Third Circuit considered to be distinct issues, due to the possible

deterioration in the condition of the art works due to the extended delay in execution for

ten years, the Third Circuit refused the respondent buyer's request to adjourn the appeal

to avoid yet further delay in the case. *Id.* The Third Circuit decision then went on to

consider two case, one from the Second Circuit, *Parsons & Whittemore Overseas*

*Overseas Co. Inc. v. Society Generale de L'Industrie du Papier (Rakta)* 508 F.2d 969

(2nd Cir.1974). and another from the Ninth Circuit, *Ministry of Defense of the Islamic*

*Republic of Iran v. Gould Inc.* 969 F.2d 764 (9th Cir. 1992), which the court considered

addressed the distinction between confirming awards and enforcing the execution of

those awards. *Id* at 308-309.   In affirming the District Court's confirmation of the Swiss

award, as well as the District Court's modification of the requirements for execution of

the award by the parties, the Third Circuit in *Admart* at 311 further modified the District

Court's order confirming the Swiss award in order to adhere more closely to the damage

provisions of the Swiss award. Explaining that the undertaken modifications were

acceptable, the court wrote:

> Gould and *Parsons & Whitetmore* indicate that there is a distinction
> between the substance of a foreign arbitral award and its execution.
> The Convention uses the term "enforcement" but does not mention
> execution on a judgment, a process that would generally be governed

> by the law of the confirmation forum. *Gould* and *Parsons & Whitetmore*
> did not give the arbitrator's decision a brittle rigidity but found some
> flexibility to modify the execution of an award without altering its sub-
> stance. That leeway, however, is very small and is available only in
> limited circumstances so as not to interfere with the Convention's clear
> preference for confirmation of awards. *Id* at 309.

Finally, addressing the long delay in the execution of the confirmed award, the Third

Circuit panel admonished the parties:

> We remind the parties that they have submitted themselves
> to the jurisdiction of the United States District Court for the
> District of Delaware. Accordingly, failure to follow the orders
> of the District Court may submit them to sanctions for contempt
> of court. This dispute has been unduly prolonged by the recal-
> citrance of the parties and must come to an end. *Id* at 312.

As in the case at bar, UNIFI has managed thus far to delay its compliance with the

payment provisions of the Consent Award for eighteen months, January 2016 to June of

2017, as well as having avoided the consequences of that non-compliance, the obligation

to immediately pay the lump sum provided for in the Consent Award. As did the party

resisting compliance in *Admart,* that sought to have the case adjourned at the Court of

Appeals. UNIFI attempts to use its commencement of an arbitration in Geneva, under the

arbitration provisions of the Settlement Agreement, which explicitly precludes

submission of payment disputes to arbitration, to avoid its compliance obligations here.

   D.  The Court has the Authority to Decide Upon a Proceeding to Resolve the
       Factual Issue UNIFI has Raised

Also addressing the arbitral execution issue, a Panel of the Eighth Circuit in

*Domino Group Inc v. Charlie Parker Mem'l Foundation*, 985 F.2d 417, 419 (8th Cir.

1993) was presented with a decision by the court below vacating a prior confirmation of

an arbitral award that had given specific performance as the relief in the arbitrator's

award. On appeal, after the court below had vacated its confirmation order, they declined

15

to remand the matter back to the arbitrator. *Id at 421*. The court had set a trial to

determine whether an order should issue modifying the specific performance decree, the

Court of Appeals reversed the District Court's decision by ordering reinstatement of the

confirmed arbitral award providing specific performance as its arbitral remedy. *Id*. In

doing so this Eighth Circuit Panel let the District Court's order setting a trial stand, but

held that whatever such proceeding the court below conducted would be for the sole

purpose of determining what additional remedy, or order, needed to be entered or

ordered, to accomplish the execution of the arbitral award's specific performance relief.

*Id*.

## **CONCLUSION**

Petitioner Albtelecom respectfully prays that this Honorable Court recognize its

jurisdiction under the New York Convention and under its ancillary jurisdiction to

promptly adjudicate the factual issue Respondent UNIFI has raised to resist compliance

with its lump sum payment obligation under the Consent Award and grant such further

and other relief, including, but not limited to, the awarding of attorney's fees as this

Honorable Court deems just.

New York, New York
September 15, 2017

Mavronicolas PC
/S/Anthony Mavronicolas
By:Anthony Mavronicolas
(Counsel for Albtelecom SH.A)
415 Madison Avenue, 18th Floor
New York, New York 10017
amavronicolas@ajm-law.com
(212) 2536040 phone
(212) 2026263 fax