USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/28/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ALBTELECOM SH.A,

                          Plaintiff,

-v-

UNIFI COMMUNICATIONS, INC.,

                          Defendant.

------------------------------------------------------------X

16 Civ. 9001 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a question resulting from this Court's confirmation in 2017 of a foreign arbitration award: whether further litigation as to compliance *vel non* with the terms of that award must take place in this Court or in arbitration.

On May 30, 2017, this Court confirmed an arbitration award (the "Award") in favor of petitioner Albtelecom SH.A ("Albtelecom"). Dkt. 36 (the "May 30 Decision"); *see* Dkt. 1 (the "Petition" or "Pet."). The 41-page Award, rendered September 2, 2015 by an arbitrator of the ICC International Court of Arbitration ("ICC") on consent of the parties, is against respondent UNIFI Communications, Inc. ("Unifi").

In addition to confirmation of the Award, Albtelecom sought damages from Unifi based on Unifi's alleged breach of the Award. It argued that Unifi's failure, post-Award, to make all payments required by the Award triggers an enhanced damages remedy under the Award. Unifi resisted Albtelecom's bid for a judgment of damages premised on a finding of breach. It argued that any failure on its part to make payments consistent with the Award's payment schedule was excused by an ensuing agreement between the parties that superseded the Award's deadlines.

In the May 30 Decision, this Court confirmed the Award. The Court, however, declined to rule on claims relating to the parties' post-Award conduct, including Unifi's alleged failure to comply with the Award's payment schedule. The Court requested supplemental briefing on two issues:

(1) whether, in light of Unifi's claim of an ensuing agreement between the parties excusing compliance, a claim of breach is required to be brought elsewhere under the Award and/or the parties' contract; and

(2) if not, whether this Court, as opposed to another forum such as the arbitration that Unifi had recently initiated in Switzerland under the auspices of the ICC, was the proper forum to resolve such a claim.

For the reasons explained below, the Court holds that further proceedings as to the breaches of the Award alleged by Albtelecom must, under terms of the parties' agreements, be brought in arbitration.

## I. Background[1]

### 1. The Arbitration and Award

The Court assumes familiarity with its prior decision confirming the Award, from which it draws in recounting background facts relevant to this decision.

---

[1] The following facts are derived from the Petition; the declaration of Christopher Bollen in support of the Petition, Dkt. 3 ("Bollen Decl."), and the documents attached to the declaration, including the parties' underlying contract ("Bollen Decl. Ex. 1") ("Contract"), and the award of the arbitral panel (Bollen Decl. Ex. 2) ("Award"); Albtelecom's memorandum of law in support, Dkt. 22 ("Pl. Confirmation Br."); the declaration of Ervin Shpori in support, Dkt. 23 ("Shpori Decl."); and the supplemental declaration of Christopher Bollen in support, Dkt. 24 ("Bollen Suppl. Decl."). The Court also considered the following materials submitted by Unifi in opposition to the Petition and in support of its cross-motion to dismiss or stay the Petition: its memorandum of law, Dkt. 20 ("Unifi Mem."), and its reply memorandum, Dkt. 31 ("Unifi Reply Mem."); the declaration of Joseph P. Goldberg, Dkt. 16 ("Goldberg Decl."); the declaration of Adrian Shatku, Dkt. 17 ("Shatku Decl."); the declaration of Daniel Hochstrasser, Dkt. 18 ("Hochstrasser Decl."); the supplemental declaration of Daniel Hochstrasser, Dkt. 21

2

Briefly, this case arises out of a contract between Albtelecom and Unifi, entered into on August 8, 2006, for the provision of international telecommunications services. A dispute later arose under the contract, with Albtelecom claiming that Unifi had not paid Albtelecom fully for its services rendered. Award ¶ 6.

On June 29, 2012, Albtelecom initiated arbitral proceedings against Unifi. Bollen Decl. ¶ 4. It did so pursuant to paragraph 21 of the parties' contract, which provided that disputes between the parties were to be resolved by an arbitrator appointed by the ICC pursuant to the ICC's rules. Bollen Decl. ¶ 3. On January 11, 2013, on consent of the parties, an arbitral tribunal, consisting of a sole arbitrator, Joachim Knoll, was constituted. Bollen Decl. ¶ 5; *see* Award ¶¶ 16–17.

On April 21, 2015, the parties asked the arbitrator "to issue a Consent Award which shall in its general part (ground of the award) reproduce the settlement agreement and in its decision (ruling) reproduce clause 2 as well as the annex of the Settlement agreement." Bollen Decl. ¶ 14; Award ¶ 100. The parties thereafter furnished the arbitrator with a copy of the settlement agreement. Award ¶ 102.

On June 16, 2015, the arbitrator provided a draft of his proposed Award to the parties, for their review and comment. *Id.* ¶ 105. The parties commented on the draft award, suggesting minor changes which the arbitrator accepted. *Id.* ¶ 106. The arbitrator agreed to issue an Award on consent. *Id.* ¶ 115 ("Against this background, and in the absence of any public policy-based concerns against the rendering of an award by consent, the Sole Arbitrator agrees to render an

---

("Hochstrasser Suppl. Decl."); and the supplemental declaration of Adrian Shatku, Dkt. 32 ("Shatku Reply Decl.").

award by consent."). On July 29, 2015, the arbitrator closed the arbitral proceedings, pursuant to Article 27 of the ICC. *Id.* ¶ 108.

On September 2, 2015, the Award was issued. It awarded Albtelecom the amount of EUR 1,088,000, which Unifi was to pay by bank transfer in 39 monthly installments, which the Award specified by date and amount. Award ¶ 118. The Award further provided that, should Unifi fail to make payments consistent with the schedule it set and fail to cure under the terms provided by the settlement agreement, Albtelecom was entitled to claim EUR 2,100,000 from Unifi. *Id.* The Award further provided that payments overdue under the Award were to "bear interest at the rate of 2.5% per year, and fixed costs of $115,000," which were to be borne by Albtelecom. *Id.* Each party was responsible for bearing its own legal and other costs in connection with the arbitral proceedings and the settlement agreement. *Id.* Neither party appealed the Award. Bollen Decl. ¶ 18.

### 2. Unifi's Alleged Failure to Pay Under the Award

Albtelecom alleges that, after the Award issued, Unifi made the first three installment payments under it—due in September, October, and November 2015—although the latter two were paid after the deadline set in the Award. Bollen Decl. ¶¶ 21–23. However, it alleges, Unifi did not make any further payments or cure its failure to timely pay. *Id.* ¶ 24. Albtelecom alleges that after it issued a notice of failure to pay, Unifi responded with the "spurious" claim that "any delay in payment occurred with Albtelecom's full knowledge and understanding." *Id.* ¶ 26. Albtelecom alleges that, as of November 16, 2017, Unifi had paid it only EUR 396,000, and that it is therefore entitled, under the Award, to EUR 1,704,000 (the difference between the EUR 2,100,000 that Albtelecom is due in the event of a failure by Unifi to pay or cure under the Award and the 396,000 it has paid). *Id.* ¶ 28.

4

### 3. This Action

On November 17, 2016, Albtelecom filed the Petition. The Petition sought confirmation of the Award. The Petition also sought entry of judgment in the amount of EUR 1,805,693.21,[2] plus interest from December 15, 2015 on that sum, and costs and fees. *Id.* ¶ 15 & Prayer for Relief.

On March 3, 2017, Unifi responded, opposing the Petition and cross-moving to dismiss or stay the Petition, Dkt. 14–15, and submitting three supporting declarations, Dkt. 16–18. Unifi recounted much of the same history as Albtelecom. But, Unifi contended, after the Award had issued, the parties had entered into business agreements suspending Unifi's monthly payment obligations. And, it stated, pursuant to that understanding, Albtelecom had forgone sending default notices to Unifi during much of 2016, before it unexpectedly did so in October 2016. *See* Unifi Mem. at 2; *see generally* Shatku Decl. & Exs. A–C.

As the Court previously recounted, Unifi made three arguments in opposition to the confirmation of the Award. First, it argued, the New York Convention does not apply to the Award, because it took the form of a consent award. Unifi Mem. at 12. Second, it argued, the Petition should be stayed, because, according to the terms of the Award, any disputes arising under the Award, except for disputes relating to Unifi's payments, must be arbitrated in Switzerland. And, Unifi argued, Albtelecom's petition implicates several such provisions of the Award beyond provisions relating to Unifi's payments, including because, it argued, the parties' post-Award agreements implicate Swiss law. *Id.* at 13. To address these issues, Unifi stated, on March 3, 2017, it had initiated a request for arbitration with the ICC. *Id.* at 11; *see* Hockstrasser

---

[2] As the Court noted in its May 30 Decision, the Petition does not explain the origins of this figure. It appears to reflect the EUR 1,704,000 Albtelecom contends is due under the award, plus 2.5% interest, but the Petition does not clarify the basis on which that interest calculation was made.

5

Decl. & Ex. 2. Third, Unifi argued, if the Court confirmed the Petition, the Court should not award Albtelecom a lump-sum judgment (*i.e.*, based on the EUR 2,100,000 provision applicable in cases of uncured default) because there are disputed issues of fact as to whether Unifi was excused from its payment obligation, including based on an alleged ensuing agreement among the parties about the payment schedule. *Id.* at 15–19.

The Court's May 30 Decision rejected the first of Unifi's arguments. The Court held that an Award entered into by consent of the parties and adopted by the ICC arbitrator, no less than an Award entered into after more contentious arbitral litigation, was subject to confirmation in this Court under the New York Convention. *See* May 30 Decision at 9–11. However, the Court sought supplemental briefing as to whether Albtelecom's claim for breach was required to be brought in arbitration; and, if not, whether this Court should nevertheless stay proceedings pending resolution of this dispute elsewhere.

On September 15, 2017, in response to the Court's May 30 Decision, the parties each submitted supplemental briefs. *See* Dkt. 44 (Pl. Br.); Dkt 45 (Def. Br.). On October 6, 2017, the parties submitted reply briefs in further support. *See* Dkt. 49 (Def. Reply Br.); Dkt. 51 (Pl. Reply Br.).

## II. Discussion

Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, *implemented by* 9 U.S.C. §§ 201-08 (the "New York Convention" or "Convention"), U.S. courts have an "obligation to 'recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles.'" *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 183 (2d Cir. 2017) (quoting N.Y. Convention art. III.).

The Court has confirmed the ICC Award in this case, and thus satisfied its obligations under the Convention. *See id.* The question presented at this stage is which tribunal will determine whether Unifi has complied with the terms of the agreement embodied in the Award. That question, the Award itself makes clear, is to be resolved in arbitration.

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción ("Pemex")*, 832 F.3d 92, 111 (2d Cir. 2016), *cert. dismissed*, 137 S. Ct. 1622 (2017) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). Nevertheless, although "the confirmation role is limited," a district court is "allowed . . . to interpret the contents of applicable awards." *Id.*; *see Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Exercising that limited authority, the Court concludes that the Award prescribes resolution of the instant dispute in arbitration.[3]

The Award incorporates the settlement agreement between the parties that resulted in the Award. *See* Award ¶ 96 (the "Settlement Agreement"). Within that Settlement Agreement—again, fully incorporated within the Award—is an arbitration provision. That provision specifies:

> All disputes, save those related to clause 2, arising out of this Settlement Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one arbitrator appointed in accordance with the said Rules. The seat of arbitration shall be Geneva, Switzerland. The language to be used in the arbitral proceedings shall be English.

---

[3] The Second Circuit's decisions in *Thai-Lao Lignite* and *Pemex*, on which Albtelecom relies, do not directly bear on the issue before this Court. Those cases address a U.S. court's discretion to deny enforcement of, *see Pemex*, 832 F.3d 99–100, 107–111, or to set aside, *see Thai-Lao Lignite*, 182–189, an arbitral award that has been vacated in the jurisdiction in which it was obtained. But the Award at issue here has not been vacated or even called into question in the jurisdiction—Switzerland—in which it was obtained.

7

Award ¶ 96 (Settlement Agreement), Cl. 13.2.

Thus, by its terms, the Award commits the resolution of any dispute arising out of the underlying Settlement Agreement to arbitration, save for "those related to clause 2." Clause 2 of the Settlement Agreement details the payments Unifi owes to Albtelecom, including, in Clause 2.4, the parties' agreement that, "[s]hould Unifi fail to make its payments in line with the terms set out in this clause 2 . . . , Albtelecom shall be entitled to claim forthwith the amount of EUR 2,100,000.00.- less any payments made to date."

The question, therefore, is whether the parties' current dispute "arises out of" the Settlement Agreement—and thus is subject to that Agreement's arbitration provision—and if so, whether the dispute falls within the limited exception to arbitration for claims "related to clause 2" of that agreement, such that it is not required to be arbitrated. The Court answers the first question in the affirmative and the second in the negative—the latter because the dispute has dimensions that clearly fall outside of clause 2. The Court therefore concludes that this dispute must, by the terms of the parties' agreement, be arbitrated.

First, this dispute clearly arises out of the Settlement Agreement. The agreement that the parties asked the arbitrator to adopt in his consent award was the Settlement Agreement. It and the Award are thus intimately intertwined. Indeed, the Award reproduces the entirety of the Settlement Agreement. *See* Award ¶ 96. There is, therefore, no daylight between those disputes that might be said to arise out of the Settlement Agreement and those that might be said to arise from the Award. The two documents are, effectively, coterminous.

And this dispute plainly arises out of both. The phrase "arising out of" is "the paradigm of a broad" arbitration clause. *See, e.g.*, *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). Claims asserted under such a broad clause "are presumptively arbitrable."

8

*Id.* The parties' current dispute concerns whether Unifi has complied with the schedule of payments required by the Award and the Settlement Agreement, and, if not, whether such noncompliance is excused because of a later agreement among, or later conduct by, the parties. That is, Unifi contends, the Award's requirements have been superseded—and the terms of the Award amended—by the parties' post-Award dealings. *See* Def. Reply Br. at 1.

Albtelecom contends that the arbitration clause does not apply to the instant dispute because the Settlement Agreement is incorporated within the Award "for the limited purpose of explaining the grounds for the Consent Award only." Pl. Reply Br. at 4. But that argument is not supported by the Award's text, which commits all disputes arising out of the Agreement to arbitration, save for those "related to clause 2" of the Agreement. In any event, whether the Settlement Agreement's arbitration clause is conceived of as a part of the Award or merely a part of the Settlement Agreement is immaterial here. Regardless of that conceptual issue, the parties' dispute here "arises out of" both the Settlement Agreement and the Award as the two documents are inextricably interwoven.

Second, the parties' instant dispute does not relate —exclusively—to Clause 2 of the Settlement Agreement. And that is the proper inquiry: Given the broad language of the arbitration clause, the Court construes the clause's exception—"save those related to Clause 2"—narrowly. *See, e.g.*, *Collins & Aikman*, 58 F.3d at 20. Thus, disputes that straddle both Clause 2 and other provisions of the Settlement Agreement fall within the broad arbitration clause. *See, e.g.*, *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (construing exception to arbitration clause narrowly in light of "the Supreme Court's instructions that 'there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that

9

the arbitration clause is *not susceptible* of an interpretation that covers the asserted dispute,' and that '[d]oubts should be resolved in favor of coverage'" (quoting *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)).

Such is the case here. The dispute here certainly relates in part to Clause 2 of the Settlement Agreement. That clause, reproduced as Paragraph 118 of the Award, sets out the schedule on which Unifi must make payment to Albtelecom. *See* Award ¶¶ 96 (Settlement Agreement, Cl. 2), 118. The parties disagree whether the balloon payment in Clause 2.4 has been triggered, as to make Unifi out of compliance. That dispute surely relates to Clause 2.

But the instant dispute sweeps much further, so as substantially to exceed the scope of Clause 2. It is more than a bare claim of nonpayment. It implicates later dealings between the parties. And while the implications of these dealings for Unifi's obligations under the Award (and the Settlement Agreement on which the Award is based) are hotly disputed, the existence of post-Award dealings between Albtelecom and Unifi is not. Specifically, as alleged without contradiction by Albtelecom, Unifi attempted, over the course of 2015 and 2016, to reengage Albtelecom in a business deal. Those efforts, Unifi alleges, did not bear fruit because Albtelecom allegedly was unwilling to meet with Unifi. *See* Shatku Decl. ¶¶ 13–42. Unifi further contends that Albtelecom's unwillingness to meet with Unifi and to restart their business relationship led to cash-flow issues on Unifi's part that prevented it from timely making the payments Albtelecom contends it was owed. These issues plainly implicate, at the very least, a different clause of the Settlement Agreement—Clause 7, which unlike Clause 2 is not exempted by the text of the arbitration obligation. Clause 7 requires the parties to "employ good faith efforts towards entering in a business agreement between themselves." Award ¶ 96, Cl. 7.1. The entity deciding whether a cause of Unifi's nonpayment was Albtelecom's breach of its duty

10

under the Agreement to "employ good faith efforts towards entering into a business agreement" with Unifi will thus be compelled to apply a provision of the Settlement Agreement as to which disputes are committed to arbitration.

In its earlier briefing in this case, Albtelecom conceded as much. In seeking to refute Unifi's claim that the factual disputes regarding the parties' post-Award dealings precluded enforcement of the Award, Albtelecom—quite rightly—argued that those issues were "a matter for arbitration under the settlement agreement and not a matter in the summary proceedings for the enforcement of the Consent Award before this Court." Pl. Confirmation Br. at 14. That logic is correct. It requires that an arbitrator, not this Court, resolve the instant dispute, straddling as it does, at least, Clauses 2 and 7 of the Agreement.

Notably, Unifi has not moved to *compel* arbitration. It merely seeks to avoid litigation of this dispute in this Court. Accordingly, while this decision resolves whether the parties' dispute as to the impact of their post-Award dealings on Unifi's payment obligations under the Award may be litigated in this Court (it may not), no party has moved to compel arbitration. The Court thus does not presently have occasion to consider whether to compel arbitration.

The Court therefore invites the parties to submit, in a joint letter no longer than six single-spaced pages, their views as to whether there is a basis for the Court to affirmatively compel arbitration; and whether the Court should stay or dismiss this action. *Cf. Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) ("[T]he Federal Arbitration Act . . . requires a stay of proceedings when all claims are referred to arbitration and a stay requested.").

## CONCLUSION

For the reasons stated above, the Court holds that this dispute is subject to arbitration pursuant to the parties' Settlement Agreement as adopted in the arbitral Award confirmed by this

11

Court. The Court therefore denies Albtelecom's request that it enforce compliance with the Award. By two weeks from today, *i.e.* September 11, 2018, the parties are to submit a joint letter, of no more than six single-spaced pages in length, setting forth their respective views as to whether the case should be referred to arbitration, and whether this action should now be dismissed or stayed. Beginning at least one week prior to this deadline, counsel for the parties are to meet and confer on this subject. Pending further action from the Court, this case is hereby stayed.

The clerk of court is respectfully directed to close the motions pending at Dkts. 44 and 45.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 28, 2018
New York, New York